PRECEDENTIAL


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-1150
_____


KEVIN J. WITASICK, SR.;
WHITNEY S. WITASICK, husband and wife,
Appellants


v.


MINNESOTA MUTUAL LIFE INSURANCE CO,
a/k/a Minnesota Life Insurance Co.,
A Securian Company;
STANDARD INSURANCE CO,
a/k/a Standard Life Insurance Co
_____


On Appeal from the United States District Court
for the District of New Jersey

(D.C. Civil No. 1-12-cv-03474)
District Judge: Honorable Joseph H. Rodriguez

ARGUED MAY 21, 2015

BEFORE:  FUENTES, GREENAWAY, JR., and
NYGAARD, *Circuit Judges*


(Filed October 1, 2015)

Kevin J. Witasick, Sr., Esq.  [Argued]
219 Bay Road
Ocean City, NJ 08226

Whitney S. Witasick, Esq.
219 Bay Road
Ocean City, NJ 08226

        *Appellants*

Jacqueline J. Herring, Esq. [Argued]
Warren S. von Schleicher, Esq.
Smith, von Schleicher & Associates
180 North LaSalle Street
Suite 3130
Chicago, IL 60601

        *Counsel for Appellees*

_____


OPINION OF THE COURT
_____


NYGAARD, *Circuit Judge.*

*Factual and Procedural Background*

A disability policy and a business overhead expense policy issued by Appellee Minnesota Life Insurance Company covered Appellant Kevin Witasick.[1]  Those policies were later acquired and administered by Appellee Standard Insurance Company.  Witasick made claims against both policies, which were honored by the Appellees.  A dispute arose, however, concerning the coverage of some of Witasick's claimed business expenses.  After years of discussion and negotiation, the parties ultimately settled their dispute.  Standard agreed to pay more than $4 million in consideration to Witasick and Witasick agreed to release all claims—known, unknown, and any future claims— against the Appellee insurance companies.  The settlement also contained a covenant not to sue, whereby Witasick agreed not to pursue any cause of action against Standard and Minnesota Life stemming from "any conduct prior to the date the Parties sign this document, or which is related to, or arises out of" the insurance policies.  Supp. App. at 29.

While these settlement negotiations were taking place, the United States Government notified Witasick that he was the target of a federal grand jury investigation related to certain fraud charges and business expense claims on his federal income tax returns.  Witasick was indicted in October of 2007.  To support its charge of mail fraud, the Government relied on information and documents Witasick had submitted

---

[1] While his wife is a named party to this appeal, we will refer only to Mr. Witasick throughout this opinion.

3

to Appellee Standard. An employee of Standard testified before the Grand Jury and then again at Witasick's trial. Witasick was found guilty of most of the charges, the exception being his acquittal on the mail fraud charge.[2] He was sentenced to fifteen months' imprisonment.

In November of 2011, Witasick filed a complaint against the Appellee insurance companies. The complaint contained more than twenty claims based on the former policies or on Standard's cooperation with the Government prosecution. The Appellees asked the District Court to dismiss the complaint, arguing that Witasick's claims were prohibited by the settlement agreement. The District Court agreed and dismissed the complaint. Witasick filed a motion for reconsideration which was likewise denied. Witasick appeals. We will affirm.

*Appellate Jurisdiction*

Whether we have appellate jurisdiction is the threshold issue in this case. A notice of appeal must be filed "within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). This time limit is "mandatory and jurisdictional." *Bowles v. Russell*, 551 U.S. 205, 209-10 (2007) (internal quotation marks omitted). If an order granting a motion to dismiss is not set out in a separate document, then judgment is not deemed entered until "150 days have run from the entry in the civil docket." Fed. R. Civ. P. 58(a), (c)(2)(B). "[A]n order is treated as a separate document if it satisfies three criteria: (1) it must be self-contained and separate from the opinion, (2) it must note the

---

[2] Witasick's wife was acquitted on all charges.

4

relief granted, and (3) it must omit (or at least substantially omit) the trial court's reasons for disposing of the claims." *LeBoon v. Lancaster Jewish Cmty. Cntr. Ass'n*., 503 F.3d 217, 224 (3d Cir. 2007) (citing *Local Union No. 1992, IBEW v. Okonite Co*., 358 F.3d 278, 285 (3d Cir. 2004); *In re Cendant Corp. Securities Litigation*, 454 F.3d 235, 241 (3d Cir. 2006)).

Here, the District Court's memorandum opinion granting the motion to dismiss was entered on March 25, 2013. Because Witasick did not file his notice of appeal until September 23, 2013—considerably more than 30 days after the entry of the memorandum opinion—Appellees contend that the notice was filed too late and that we should dismiss the appeal. *See, e.g., Bowles, supra*. (timely filing of a notice of appeal in a civil case is a jurisdictional requirement). We disagree.

The March 25, 2013, ten-page memorandum opinion resolved all claims and detailed the District Court's reasons for granting the motion to dismiss. However, it did not set out the judgment of dismissal in a separate document. Instead, page 10 of the memorandum (under a heading of "Conclusion") states that "[a]ccordingly and incorporating the discussion held during oral argument on the motion, IT IS ORDERED this 25th day of March, 2013, that Defendant's motion to dismiss the Complaint [16] is hereby GRANTED." Supp. App. at 20. An electronic signature (/s/) for Judge Joseph Rodriguez was appended to the memorandum. Supp. App. at 20. The problem, however, is that this order is not self-contained and it includes the District Court's reasoning. Therefore, it cannot be considered a separate document. *See In re Cendant*, 454 F.3d at 243. The District Court itself

5

seemed to realize that it never entered a separate document when it dismissed the Appellant's complaint. In July of 2013, Witasick filed a motion asking the District Court to enter a judgment pursuant to Rule 58(a), presumably so he could appeal. Appellees filed a memorandum in opposition and the District Court denied the motion as moot in January of 2014.[3] In its order denying the motion, the District Court specifically noted that "[b]ecause no separate document was entered to reflect the March 25, 2013 decision, judgment was deemed entered after 150 days pursuant to Fed.R.Civ.P. 58(c)(2)." Supp. App. at 28. Accordingly, judgment was not entered until August 22, 2013—150 days after March 25, 2013.

There is a second questionably relevant document to the issue of appellate jurisdiction: a docket entry also dated March 25, 2013 stating "Civil Case Terminated." Supp. App. at 21. Appellees point to this entry as a "separate document," arguing that it notes the relief granted, and that such electronic entries can satisfy the separate judgment requirement of Rule 58. This entry, without a doubt, relates nothing of the District Court's reasoning. *See In re Cendant*, 454 F.3d at 242. However, it cannot be considered a separate document because the phrase "Civil Case Terminated" tells us nothing of the relief granted. It is a mere clerical notation by court personnel that the case is over, without saying why. Of course, a case can be terminated for any number of reasons, such as a failure to prosecute, a failure to pay certain fees, a grant of summary judgment, a jury verdict, and so on. This entry is also used to administratively close a case during

_____

[3] The District Court found the motion mooted by the filing of Appellant's notice of appeal in September of 2013. We discuss this problematic document later in this opinion.

6

an interlocutory appeal or during a stay to allow a party to exhaust remedies, for example. A case can also be "terminated" while a district court seeks counsel for a pro se litigant. Here, the notation "Civil Case Terminated" is simply too vague to satisfy the second criteria of *In re Cendant* and a docket entry containing such a notation cannot be considered a separate document of judgment.

We agree, however, with the Appellees' larger point: electronic entries made by a district court via the federal CM/ECF System[4] can, in certain circumstances, satisfy Rule 58's requirement. This is hardly controversial. The District of New Jersey, as well as every other federal court, provides for electronic entries and gives them the force and effect of a

---

[4] As the PACER website explains, "The Case Management/Electronic Case Files (CM/ECF) system is the Federal Judiciary's comprehensive case management system for all bankruptcy, district, and appellate courts. CM/ECF allows courts to accept filings and provides access to filed documents online. CM/ECF gives access to case files by multiple parties, and offers expanded search and reporting capabilities. The system also offers the ability to immediately update dockets and download documents and print them directly from the court system." *Case Management/Electronic Case Files,* https://www.pacer.gov/cmecf/; *see also Ragguette v. Premier Wines & Spirits,* 691 F.3d 315, 321 n. 1 (3d Cir. 2012) ("The Case Management/Electronic Case Filing (CM/ECF) system is a computer case management system that allows courts to maintain electronic case files and attorneys to file (and serve) documents through the Internet").

court order. However, a holding that *every* electronic docket entry satisfies Rule 58's requirements paints with too broad a brush.

The federal CM/ECF system allows for three distinct types of case-related entries: text orders, utility events, and minute entries. A text order, as its name suggests, is an order of the court, with specific text granting, denying, or otherwise resolving a motion or, ultimately, a case. *See, e.g., United States v. Wecht*, 484 F.3d 194, 232 (3d Cir. 2007). Text orders can also be used to set a hearing, order briefing, and direct service. Such orders may be used to rule on substantive motions, like those seeking summary judgment, or those asking for a complaint to be dismissed under Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 791 (8th Cir. 2012). Text orders additionally may be used to resolve other issues that arise during litigation, like motions to suppress evidence, and/or relatively routine motions as determined by the District Judge or Clerk of Court. Indeed, the CM/ECF User Manual for the District of New Jersey specifically acknowledges the use of such orders: "the assigned judge or the Clerk's Office, if appropriate, may grant routine orders by text-only docket entry for which a Notice of Electronic Filing will be generated. In such cases, no PDF document will be issued and the text order shall constitute the Court's only order on the matter." *ECF User Manual* at page 8 (Rev. 5-1-2013), www.njd.uscourts.gov/sites/njd/files/CMECFUserGuide.pdf. Text orders usually have no difficulty satisfying the separate document requirement of Rule 58(a) and *In re Cendant*, *supra*. They are separate and self-contained from any actual opinion; they note the relief granted; and they omit (or

8

substantially omit) the District Court's reasoning. And, significantly, they contain an electronic signature of a judge.

The two other types of electronic docket entries are vastly different from text orders. Indeed, they are not orders at all. A "utility event" is an entry which records an event or action in the life of a case and often appears only on a court's private docket. [5] Utility events memorialize on the docket mundane matters like the addition of an attorney to the docket, the re-assigning of a case to a different judge, the referral of a case to mediation or a special master, the sealing of a case, the appointment of an interpreter or, apropos to this appeal, the termination of a case. These entries differ from "minute entries" in that minute entries reflect time spent in court. Minute entries might memorialize the time spent in a case management conference, a contempt hearing, a motion hearing, or a pre-trial conference. Like utility events, minute entries are not orders of the district court nor are they signed by a judge. As such, they cannot serve as a foundation for an appeal. *See, e.g., Theriot v. ASW Well Serv. Inc*., 951 F.2d 84, 87 (5th Cir. 1992) ("A minute entry, although it is a record of the court's final decision in a case or of an appellate interlocutory decision, cannot constitute a 'separate document' for the purposes of meeting the Rule 58 requirement.").

---

[5] The CM/ECF system includes both public and private docket entries. Of course, public entries are available to the general public. However, "[p]rivate docket entries are for use by chambers and COA staff only and are not available to the public." *Third Circuit Court of Appeals Technology Guide*, page 12, § 4.2 (August 4, 2014).

Therefore, because no separate document of judgment was filed in this case, the District Court's decision became final 150 days after it was entered—August 22, 2013. Witasick had 30 days from that date to file a Notice of Appeal. On September 23, 2013, he filed a document with the District Court entitled a "Contingent Notice of Appeal." Because September 22, 2013 was a Sunday, Witasick's notice was timely filed on Monday, September 23, 2013. We now turn our attention to that document.

*The Contingent Notice of Appeal*

In July of 2013, Witasick filed a motion in the District Court asking it to enter a separate judgment. On September 23, 2013—the last day he could file a notice of appeal—Witasick filed another motion asking the District Court to enter a separate document. He styled this motion a "Contingent Notice of Appeal of the court's March 25, 2013 order granting the defendants' motion to dismiss the plaintiff's complaint." Supp. App. at 22-25. In the last paragraph of this motion, Witasick stated "[i]f, however, the Court denies the Plaintiffs' Rule 58 request, this Contingent Notice of Appeal will then become the Plaintiffs' formal Notice of Appeal of the Court's March 25, 2013 Order dismissing the Plaintiffs' complaint in its entirety." Supp. App. at 25. This type of document is unorthodox, but not unheard of. *See, e.g., CE Design, Ltd. v. Cy's Crab House North, Inc.*, 731 F.3d 725, 727 (7th Cir. 2013) ("Truck Insurance could have filed a contingent notice of appeal . . . to protect its interests . . . .); *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 716 (7th Cir. 2001) (party filed a contingent notice of appeal upon advice of the Court).

10

Federal Rule of Appellate Procedure 3 sets out the requirements for a valid notice of appeal. The Rule requires that the notice specify three things: the party taking the appeal, the order being appealed from, and the name of the court to which the appeal is taken. Fed. R. App. P. 3(c)(1)(A-C). This rule is "jurisdictional in nature" and "[we] may not waive its jurisdictional requirements, even for good cause." *Massie v. U.S. Dep't of Hous. and Urban Dev.*, 620 F.3d 340, 348 (3d Cir. 2010). However, the Supreme Court has made clear that Rule 3's requirements are to be construed liberally.[6] *See Smith v. Barry*, 502 U.S. 244, 248 (1992). Witasick is unambiguously the party taking the appeal here. And, the contingent notice references the order being appealed. Albeit unstated, we also think the destination of the appeal can be sufficiently gleaned from the entire document and this defect does not strip us of our appellate jurisdiction on its own. *Cf. Anderson v. District of Columbia*, 72 F.3d 166, 168 (D.C. Cir. 1995) (exercising jurisdiction over appeal that mistakenly listed the Supreme Court of the United States, rather than the Court of Appeals for the District of Columbia Circuit). Common sense dictates as much. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 387 (1978); *Matute v. Procoast Navigation Ltd.*, 928 F.2d 627, 629 (3d Cir. 1991), *overruled on other grounds by Neely v. Club Med Mgmt. Servs. Inc.*, 63 F.3d 166 (3d Cir. 1995).

---

[6] The Supreme Court's admonition to apply these requirements liberally has special force where *pro se* litigants are concerned. *Powell v. Symons*, 680 F.3d 301, 306 n.2 (3d Cir. 2012). We note that while Witasick represents himself on appeal, his contingent notice of appeal was signed and filed by counsel on Witasick's behalf.

The nature of Witasick's contingent notice leaves some question as to whether he conclusively established his intention to appeal. *See Hindes v. FDIC*, 137 F.3d 148, 156 (3d Cir. 1998) (document filed by litigant, regardless of its title, within the time for appeal under Fed.R.App.P. 4, is effective as notice of appeal provided that it gives sufficient notice of party's intent to appeal); *Dura Sys., Inc. v. Rothbury Invs., Ltd.*, 886 F.2d 551, 555 (3d Cir. 1989). At one point, Witasick's contingent notice flatly states that "it is not the Plaintiff's intention to divest this Court (the District Court) of jurisdiction by filing this document, particularly given the various outstanding motions which have not yet been ruled upon, and that is why the Plaintiffs' have called it a 'contingent' notice of appeal." Supp. App. at 25. Since a notice of appeal divests a district court of jurisdiction, this statement injects a degree of ambiguity into Witasick's intention to appeal.

However, construing the contents of the entire document liberally, we are satisfied that Witasick, albeit awkwardly, has indicated an intention to appeal. First, Witasick's contingent notice asks the District Court to enter a separate judgment so that he can appeal. Second, he states that since the District Court failed to enter a separate document of judgment pursuant to Fed. R. Civ. P. 58, he finds it necessary to file a contingent notice to protect his right to appeal. Third, Witasick filed his contingent notice on the day it was due—30 days after the entry of the judgment appealed from. This shows us that Witasick intended to appeal and was well aware of the date by which he had to file his notice. Taken together, these evidence an intention to appeal, regardless of Witasick's outlying comment to the contrary.

12

Therefore, even though Witasick's contingent notice falls somewhat short of the requirements of Rule 3, we will nevertheless find it to be the "functional equivalent" of a notice of appeal. *Smith*, 502 U.S. at 248 (quoting *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 316-17 (1988)). We strongly emphasize, however, that the use of a contingent notice of appeal is not recommended when attempting to concretely establish appellate jurisdiction. *See, e.g., United States v. Carson*, 969 F.2d 1480, 1486 n.2 (3d Cir. 1992) ("The method utilized here is not recommended, but we think the letter is sufficient to give us appellate jurisdiction over Carson's appeal.").

*The Scope of the Notice of Appeal*

Next, the parties dispute the scope of our appellate jurisdiction. If an appeal is taken only from a specified judgment, we do not acquire jurisdiction to review other judgments not specified or "fairly . . . inferred" by the notice. *Pension Trust Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.,* 730 F.3d 263, 269 (3d Cir. 2013) (quoting *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977)). The Appellees argue that we have jurisdiction solely to review the March 25, 2013 order because that was the order specifically designated in the Contingent Notice of Appeal. [7] That is accurate: Witasick's

---

[7] Witasick also filed a Rule 59(e) motion challenging the District Court's dismissal, which he failed to challenge in their notice of appeal. Because Witasick did not file a new or amended notice of appeal encompassing the order denying the Rule 59(e) motion, we lack jurisdiction to consider that

notice clearly states that he appeals the District Court's "March 25, 2013 Order dismissing the Plaintiffs' complaint in its entirety." Supp. App. at 22-25. Further, the notice itself repeatedly references his desire to preserve his appellate rights as they relate only to the March 25, 2013 order. And, Witasick made no attempt to amend his contingent notice or file a new notice of appeal from any other order of the District Court. Therefore, we conclude that this appeal is limited to the March 25, 2013 order.

*The Merits of Witasick's Appeal*

We use a *de novo* standard of review when reviewing a district court's grant of a motion to dismiss. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). We thus apply the same standard as the District Court. *See Santomenno v. John Hancock Life Ins. Co.*, 677 F.3d 178, 182 (3d Cir. 2012). In reviewing the District Court's grant of a motion to dismiss pursuant to Rule 12(b)(6), like the District Court, we accept as true all factual allegations in the complaint and we construe the complaint in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). We consider only facts alleged in the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). We affirm a dismissal only if the plaintiff has failed to plead "'enough facts to state a claim to relief that is plausible on its face.'" *Malleus v. George*, 641

order. *See* Fed. R. App. P. 4(a)(4)(B)(ii); *Carrascosa v. McGuire*, 520 F.3d 249, 253–54 (3d Cir. 2008).

14

F.3d 560, 563 (3d Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Witasick's argument is wholly without merit.  As part of the settlement—and for millions of dollars in consideration—Witasick agreed to abandon and relinquish all claims against the Appellees.  The settlement could not be clearer:

> [t]his document is intended to be a mutual release by the Witasicks and Standard.  These Releases include, but are not limited to any presently existing claims based upon the IDI Policy and the BOE Policy, breach of contract, negligent tort, intentional tort, bad faith, fraud, breach of a covenant of good faith and fair dealing, unfair insurance practices, or violation of any statute or regulation, as well as claims for attorney fees and costs.

Supp. App. at 27.  Witasick also agreed to release the Appellees from any and all claims related to his alleged entitlement to benefits, and from any future claims, either known or unknown.  Supp. App. at 27-28, 29.  As the District Court noted, and our own review of the record confirms, the parties wanted to settle all claims, including those known and unknown, past, present and future, regarding the insurance policies at issue here.  Notably with the help and advice of counsel, Witasick agreed to the settlement and thereby

15

abandoned the claims set out in the complaint. He also agreed not to sue the Appellee insurance companies, yet went ahead with a lawsuit. Witasick is stuck with the terms of his bargain.

Witasick argues that reliance on a settlement agreement to bar litigation must be specifically pleaded as a defense. We are unpersuaded. Courts regularly take settlement agreements into consideration when dismissing complaints. *See, e.g., Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 281 (3d Cir. 2014); *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988). Also, a Covenant Not to Sue is part of the settlement agreement. This Covenant specifically prohibits Witasick from suing the Appellees "for any conduct prior to the date the Parties sign this document, or which is related to, or arises out of, the IDI Policy, the IDI Claim, the BOE Policy, or the BOE Claim, or which has been released or waived by this Release." Supp. App. at 29. This is yet another bar to Witasick's litigation.[8]

---

[8] Witasick also argues that a malicious prosecution claim survives outside of the settlement agreement/release. Based on Standard's cooperation with the federal government's criminal prosecution, Witasick maintains that this claim was born after he executed the settlement. But he contradicts himself by specifically stating that the alleged malicious prosecution began in 2002, five years before the settlement. Appellant's Brief at 44. This claim, however, is barred by the settlement agreement, no matter when it accrued and is wholly without merit. Witasick agreed to release all claims that accrued prior to the execution of the settlement agreement. Because Witasick explicitly released all claims against the Appellees that are predicated on conduct that

*Conclusion*

We will affirm the order of the District Court dismissing Witasick's claims because they are barred by the Parties' settlement agreement.[9]

occurred before the settlement, the malicious prosecution claim is barred.

[9] The Appellees, pursuant to the provisions of the settlement agreement, are entitled to an award of attorney's fees. As is our practice, we will award costs to the Appellees today as the prevailing party. Fees must be sought, however, in a separate motion, detailing the amount requested.