**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2855
_____

SAMUEL B. RANDOLPH, IV,
                                        Appellant

v.

JOHN WETZEL, Secretary of PA D.O.C.; JEFFREY BEARD; SHIRLEY MOORE-SMEAL; LOUIS FOLINO, Superintendent; MICHAEL WENEROWICZ, Superintendent; DEPUTY CAPOZZA, Deputy Superintendent; MR. LUDWIG, Unit Manager; MAJOR FEILDS; MICHAEL GUYTON; CAPTAIN WALKER; CAPT. BRUMFIELD; CAPT. STRICKLAND; LT. DERRICK WHITE; LT. LOZAR; LT. ROBERT KENNEDY; LT. SHAUMP; LT. BARKEFELT; LT. ASHLEY; DEPUTY LANE, Deputy Superintendent; MR. REGAN, Unit Manager; DEPUTY MARTIN; JAMES DAY; CAPTAIN CAMPBELL; CAPT. FLAIM; LT. ROTH; LT. TERRA; LT. VEROSKY; LT. PRICE; LT. VICTOR SANTOYO; LT. GREGO; SGT. LAHR; SGT. YUNKIN; SGT. CHAPELLE; SGT. STANKOVICH; SGT. HOLSEY; MS. CUNNINGHAM; MS. WANNAMAKER; C.O. RUCKER; C.O. DAVIDSON; C.O. LACOTTA; C.O. RAMBLER; C.O. MILLER; MYRON STANISHEFSKI; SGT. KLINE; SGT. THOMAS; SGT. CURRAN; MS. COLEY; MS. S. CARTER; MS. H. POWLOWSKI; C/O PENCE; C.O. SPEELMAN; C.O. COLGAN; C.O. SZALAZA; IRMA VIHLIDAL; JOSEPH KORSZNIAK; DR. BYANCHUK JIN; DR. HERBICK; DR. MCDONALD; NURSE ED; NURSE SHARDAE; NURSE ARLENE; MS. KOCHI, Physician's Asst.; DAN DAVIS; MARY CANINO; JOHN KUSHNER, Therapist; MS. SEBECK; DR. BLATT; DR. STEPHONIC; DR. FELIPE ARIAS; NURSE TOM; NURSE NEDRA GREGO; M. DIGGS, Physician's Asst.; DORINA VARNER; WENDY SHAYLOR; MR. NUNEZ; NURSE BRUCE POKOL; C.O. MS. C.D. MILBOURNE, Sued in their individual and official capacities
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:11-cv-03396)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 25, 2019

Before:  CHAGARES, BIBAS and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed February 26, 2019)
_____

OPINION[*]
_____

PER CURIAM

Pennsylvania state prisoner Samuel B. Randolph, IV, appeals pro se from the District Court's final judgment entered against him in this civil rights action.  For the reasons that follow, we will affirm.

I.

Because we write primarily for the parties, who are familiar with this case's extensive procedural history, we discuss that history only briefly.  In mid-2011, Randolph commenced this action by filing a pro se complaint in the District Court.  Randolph's sweeping, 83-page complaint was brought against more than 70 defendants, all of whom appeared to be either prison officials or medical personnel who worked at one of the two Pennsylvania Department of Corrections prisons that housed Randolph between 2009 and 2011.  Randolph's claims alleged, inter alia, numerous violations of his constitutional rights stemming from a host of events that allegedly took place during that time period.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

At the end of 2012, after discovery had commenced and the defendants had moved for summary judgment, Randolph moved the District Court for permission to file an "Amended and Supplemental Complaint" pursuant to Federal Rules of Civil Procedure 15(a) and 15(d).[1] This proposed pleading, a massive, 171-page document, sought to raise more allegations and name dozens of additional defendants. In March 2013, the District Court denied Randolph's motion without prejudice to his ability to file a separate civil action addressing claims arising after those presented in his original complaint.[2]

Between December 2013 and June 2014, the District Court issued two decisions granting summary judgment against Randolph with respect to all but the following claims: (1) an excessive force claim against three defendants (Corrections Officers Speelman, Lacotta, and Rambler); and (2) a retaliation claim against two defendants (Speelman and Lacotta). The District Court later appointed pro bono counsel for Randolph for the purpose of trying those surviving claims. A jury trial was ultimately held in July 2017. At the close of the evidence, the District Court granted Lacotta's motion for a directed verdict on the retaliation claim brought against him. The other claims were submitted to the jury, which

---

[1] Rule 15(a) pertains to amended pleadings, while Rule 15(d) pertains to supplemental pleadings. "[A]mended pleadings relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading; [supplemental pleadings] deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings." T Mobile Ne. LLC v. City of Wilmington, Del., No. 18-1831, 2019 WL 150630, at *3 n.4 (3d Cir. Jan. 10, 2019) (precedential opinion) (second alteration in original) (internal quotation marks omitted).

[2] In July 2013, Randolph filed that separate action. See Dist. Ct. Case No. 2:13-cv-04116. The District Court stayed that case and placed it in suspense in December 2016, and it currently remains in that procedural posture.

returned a verdict against Randolph on each claim. On July 24, 2017, the District Court entered judgment against Randolph. This timely pro se appeal, filed on August 17, 2017, followed.[3]

II.

We begin with Randolph's challenge to the District Court's decision, entered March 19, 2013, denying him permission to file his "Amended and Supplemental Complaint." We review that decision for abuse of discretion. See Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011) (addressing motion to amend under Rule 15(a)); Cencast Servs., L.P. v. United States, 729 F.3d 1352, 1365 (Fed. Cir. 2013) (citing Schwarz v. City of Treasure Island, 544 F.3d 1201, 1211 (11th Cir. 2008)) (addressing motion to supplement under Rule 15(d)). The District Court denied Randolph's motion to amend/supplement based on its determination that the defendants would suffer undue prejudice if the motion were granted. See Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005) (explaining that a district court may deny leave to amend if "the amendment would prejudice

---

[3] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. However, to the extent that Randolph's briefing challenges the District Court's August 29, 2017 order denying his motion for a new trial, our jurisdiction does not reach that post-judgment order because he did not file a new notice of appeal or amend his original notice after the District Court entered that order. See Fed. R. App. P. 4(a)(4)(B)(ii); Witasick v. Minn. Mut. Life Ins. Co., 803 F.3d 184, 191 n.7 (3d Cir. 2015). But even if we did have jurisdiction over that order, Randolph would not be entitled to any relief from it. In that order, the District Court denied Randolph's new-trial motion without prejudice to his ability to refile that motion within 30 days of his receipt of the trial transcript (in that same order, the District Court granted Randolph's request for a copy of that transcript and directed the Clerk to mail that copy to him). That approach by the District Court was eminently reasonable, and it served to help, not hinder, Randolph. Although Randolph ultimately did not refile his new-trial motion, that was his choice and not some error by the District Court.

4

the other party"); Carter v. Bigelow, 787 F.3d 1269, 1279 (10th Cir. 2015) (indicating that prejudice to the opposing party may serve as a basis for denying a motion to supplement). Given that Randolph's motion for leave to amend/supplement sought to significantly expand the scope of this case, and was filed after discovery had commenced and the defendants had moved for summary judgment, we conclude that the District Court acted within its discretion in denying that motion.[4]

We next consider the District Court's two summary-judgment decisions, which were entered on December 20, 2013, and June 11, 2014, respectively.[5] We review those decisions under a plenary standard. See Zaloga v. Borough of Moosic, 841 F.3d 170, 174 n.3 (3d Cir. 2016). Summary judgment is appropriate when the movants "show[] that there is no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor in determining whether a genuine factual question exists," summary judgment should be granted "unless there is sufficient evidence for a jury to reasonably find for the nonmovant." Barefoot Architect,

---

[4] Randolph has not demonstrated that a different conclusion is warranted here. Although he alleges that "the defendants" caused the delay in his moving for leave to amend by "seizing, withholding and/or destroying [his] legal property and materials" (Randolph's Opening Br. 14), his briefing does not identify *which* of the 70-plus defendants in this case were allegedly responsible, let alone point us to any evidence to support his bald allegation.

[5] The District Court's December 20, 2013 order granted summary judgment with respect to Randolph's numerous Eighth Amendment claims, as well as claims alleging violations of his rights under the First Amendment, the Fourteenth Amendment, and the Americans with Disabilities Act. The District Court's June 11, 2014 order granted summary judgment with respect to Randolph's claims of medical malpractice.

Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011) (internal quotation marks omitted). In this case, the District Court's summary-judgment analysis totaled 50 pages. In those pages, the District Court thoroughly and cogently explained why summary judgment against Randolph was warranted with respect to the vast majority of his many claims. For substantially the reasons given by the District Court, we agree with its summary-judgment rulings.[6]

Lastly, we examine Randolph's trial-related claims. Randolph contends that defense counsel committed misconduct by repeatedly referring to the fact that Randolph is on death row, thereby causing the jury to focus on his death-row status instead of the facts of the case. This claim is belied by the record, for the trial transcript shows that defense counsel did *not* refer to Randolph's death-row status in front of the jury.[7] Randolph also

---

[6] Randolph appears to argue that the District Court improperly "transmogrif[ied]" his complaint by construing all of his Eighth Amendment claims as medical malpractice claims. We find this argument unpersuasive. The District Court treated the complaint, which was not a model of clarity (see Dist. Ct. Op. entered Dec. 20, 2013, at 4 n.3 (noting that the complaint "does not contain clearly enumerated counts or claims")) as raising *both* Eighth Amendment and malpractice claims. Even if we were to assume for the sake of argument that some of those malpractice claims should have been treated as Eighth Amendment claims, Randolph has not demonstrated that those claims, properly construed, would have been able to survive summary judgment. That is, his briefing does not cite evidence in the summary-judgment record that would have been sufficient to allow a jury to reasonably find in his favor on those claims. See Barefoot Architect, Inc., 632 F.3d at 826.

[7] The death-row references at trial were first made by Randolph's own witness (fellow death-row inmate Arthur Bomar) on direct examination. The three defendants on trial later made similar references during their testimonies. All told, in approximately 100 pages of testimony, it appears that the defendants used the phrase "death row" nine times. To the extent that Randolph takes issue with those references made by the defendants, he has not persuaded us that he is entitled to relief on appeal. Those scattered references were provided merely as background and were seemingly innocuous. (See, e.g., N.T., July 21, 2017, at 6 (Speelman stating that Randolph "is an inmate who resides on death row at SCI Greene"); id. at 24 (Speelman explaining what clothes inmates "[o]n L-block, on death row," typically wear when they go out to the exercise yard); id. at 73 (Lacotta explaining

6

appears to claim that the District Court erred in refusing to instruct the jury on the defendants' spoliation of certain evidence (video footage from the prison).[8]  This claim fails, too, because Randolph did not establish that the defendants withheld or destroyed any such evidence, let alone that they did so in bad faith.  See Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 292 (3d Cir. 2018) ("[A] spoliation inference requires, among other things, actual suppression or withholding of evidence . . . ." (internal quotation marks omitted)); see also Bull v. United Parcel Serv., Inc., 665 F.3d 68, 79 (3d Cir. 2012) ("[A] finding of bad faith is pivotal to a spoliation determination.").  To the extent that Randolph complains about his trial counsel's performance, those complaints do not entitle him to any relief on appeal.  See Nelson v. Boeing Co., 446 F.3d 1118, 1119 (10th Cir. 2006) ("The general rule in civil cases is that the ineffective assistance of counsel is not a basis for appeal or retrial."); see also Kushner v. Winterthur Swiss Ins. Co., 620 F.2d 404, 408 (3d Cir. 1980) (explaining

---

that he was "work[ing] the restricted housing units, the death row blocks," when the incident undergirding Randolph's excessive-force claim occurred)).  Even if we were to assume for the sake of argument that the admission of these references at trial constituted legal error, we would conclude that any such error is harmless.  See Egan v. Del. River Port Auth., 851 F.3d 263, 276 (3d Cir. 2017) ("Under the harmless error standard, the erroneous exclusion or admission of evidence will not require reversal if it is highly probable that the error did not contribute to the judgment." (internal quotation marks omitted)).

[8] When "there is evidence that one party has destroyed or altered evidence, the opposing party can obtain a 'spoliation inference, that the destroyed evidence would have been unfavorable to the position of the offending party.'"  McMunn v. Babcock & Wilcox Power Generation Grp., Inc., 869 F.3d 246, 268 (3d Cir. 2017) (quoting Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994)).  This Court reviews the District Court's denial of a spoliation inference for abuse of discretion.  See id.

that the remedy for attorney negligence in a civil case is an action for malpractice).[9]  And to the extent that Randolph attempts to raise any other arguments in connection with his trial, none warrants relief here.

In light of the above, and having carefully considered Randolph's various arguments (including those not specifically discussed in this opinion), we see no reason to disturb the District Court's resolution of this case.[10]  Accordingly, we will affirm the District Court's final judgment entered July 24, 2017.  Randolph's request to impose sanctions against his trial counsel and defense counsel is denied.

---

[9] We take no position on whether Randolph would be able to prevail in an attorney-malpractice action.

[10] Between 2011 and 2017, the District Court issued a host of orders in this case.  Randolph's opening brief references many of them.  To the extent that he has preserved challenges to any orders not specifically discussed in this opinion, see Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) (explaining that a brief's "passing reference to an issue . . . will not suffice to bring that issue before this court" (ellipses in original) (quoting Simmons v. City of Philadelphia, 947 F.2d 1042, 1066 (3d Cir. 1991))); see also Emerson v. Thiel Coll., 296 F.3d 184, 190 n.5 (3d Cir. 2002) (per curiam) (applying waiver doctrine to pro se case), we have reviewed those challenges and conclude that none of them warrants relief here.