**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1026
_____

JEROME WASHINGTON,
                              Appellant

v.

GEORGE ONDREJKA; MICHAEL WENEROWICZ; JOHN WETZEL; J. WILLIAMS,
Correctional Officer 1; F. WEBSTER, Correctional Officer 1; B CARLSON,
Correctional Officer 1; B. BOYD, Correctional Officer 1; R GIBBS, Correctional Officer
1; J. TAYLOR, Correctional Officer 1
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:14-cv-05540)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 12, 2019

Before:  MCKEE, COWEN and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 13, 2020)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Pro se appellant Jerome Washington appeals from the judgment of the United States District Court for the Eastern District of Pennsylvania granting summary judgment in favor of the defendants. For the following reasons, we will affirm the judgment of the District Court.

In September 2014, Washington, an inmate confined at the State Correctional Institution at Camp Hill ("SCI-Camp Hill"), filed this pro se civil rights action pursuant to 42 U.S.C. § 1983; he was later permitted to amend the complaint. Washington alleged that defendants violated his First, Fifth, Eighth, and Fourteenth Amendment rights, when, on March 17, 2013 (while he was housed in the Restricted Housing Unit), he was assaulted by officers of the Correctional Emergency Response Team ("CERT") unit. Washington alleged that he was sprayed with mace, was almost drowned, had his face slammed into a metal desk, was punched in the genitals, was held in a restraint chair for five hours, and was denied medical treatment.

In January 2017, following discovery, defendants moved for summary judgment. By order entered November 30, 2017, the District Court granted the defendants' motion for summary judgment. After viewing a video of the use of force provided by the defendants, the District Court found that Washington's "version of the [events] [was] 'so utterly discredited by the record that no reasonable jury could have believed him.'" Dkt # 100, at 2 (citing Scott v. Harris, 550 U.S. 372, 380–81 (2007)). Additionally, the District Court concluded that Washington's claim regarding the restraint chair was insufficient to state an Eighth Amendment claim; that Defendants Wetzel, Wenerowicz, and Ondrejka

2

had no personal involvement; and that Washington's Fourteenth Amendment claim lacked merit as he did not allege any atypical or significant hardship during his time in the Restricted Housing Unit. Washington subsequently filed two motions for reconsideration and a motion for the appointment of counsel. After the District Court denied the first motion for reconsideration, Washington filed a notice of appeal.[1] Washington has filed three motions for appointment of counsel in this Court, one of which was previously denied. He also presents a motion for an emergency phone conference and a motion for an order compelling discovery.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of orders granting motions for summary judgment. Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriately entered only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, in a case such as this one, where there is a video recording of the incidents in question, we need not adopt the non-movant's version of the facts if the recording "blatantly contradict[s]" the non-movant's version "so that no reasonable jury could believe it." Scott, 550 U.S. at 380. We may

---

[1] The District Court later denied the other motion for reconsideration and the counsel motion, but Washington did not file an amended, see Fed. R. App. P. 4(a)(4)(B)(ii); Witasick v. Minn. Mut. Life Ins. Co., 803 F.3d 184, 191 (3d Cir. 2015), or additional notice of appeal, so those orders are not before us.

affirm on any basis supported by the record. Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

We agree with the District Court that the defendants were entitled to summary judgment on Washington's excessive use of force claim regarding the alleged assault. The record reveals that the altercation Washington complains of was a planned cell extraction; that is, a planned use of force to remove Washington from his cell due to his uncooperative behavior. The videotape provided by the defendants, which shows the extraction, refutes Washington's assertion that the CERT defendants' use of force was applied "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (holding that, to determine whether the force used by a prison official amounts to a constitutional violation, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"). As noted by the District Court, Washington conceded that he was suicidal and disorderly, warranting the extraction.[2] In light of Washington's behavior and his attempts to resist extraction from his cell,[3] the force used by the CERT officers was

---

[2] In his deposition, Washington admitted that he blocked the wicket in his cell so that officers were prevented from providing him food, see dkt # 92, at 87 (PDF page number); he was banging and kicking the door to his cell, see id.; and he intentionally flooded his cell, which resulted in approximately 5–6 inches of water at the bottom of his cell, see id. at 88–89.

[3] In his deposition, Washington concedes that he fought against the CERT officers, including throwing items at the shields carried by the officers and attempting to run away from the shields. See dkt # 92, at 90. It appears that Washington believed that the shields were electric and would kill him, which explains his desire to resist. See id.

proportional to the need for the use of force. Additionally, the record does not contain evidence of serious injuries as a result of the extraction, and the officers reasonably believed that Washington posed on ongoing threat. Finally, the defendants have detailed the efforts taken to temper the severity of the response, including pre-extraction warnings provided to the CERT officers in order to prevent asphyxia. On this record, Washington cannot show that the officers' use of force was excessive, and accordingly, summary judgment was properly entered in favor of the defendants. See Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (stating that, in evaluating whether an officer used excessive force, courts should look to several factors including the need for force, the relationship between the need and amount of forced used, the extent of injuries inflicted, the extent of the threat to the safety of staff and inmates, and any efforts to temper the severity of the forceful response) (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)).

We also agree with the District Court that defendants were entitled to summary judgment on Washington's claims regarding the use of the restraint chair. As we noted in Young v. Martin, the Supreme Court's decision in Hope v. Pelzer, 536 U.S. 730, 738 (2002), instructs us to analyze an Eighth Amendment claim based on the use of a restraint chair under the excessive use of force test. 801 F.3d 172, 180 (3d Cir. 2015).[4] In Hope, the Supreme Court held that (1) where the inmate had "already been subdued,

---

[4] Though the District Court analyzed this claim under Fuentes v. Wagner, 206 F.3d 335 (3d Cir. 2000), which analyzed a restraint chair claim under a conditions of confinement analysis, we conclude, as discussed above, that the District Court's grant of summary judgment was nevertheless proper under the standard set out in Hope.

5

handcuffed, [and] placed in leg irons," and (2) there was a "clear lack of an emergency situation" such that "[a]ny safety concerns had long since abated," then (3) subjecting the inmate to "substantial risk of physical harm" and "unnecessary pain" serves no penological justification. 536 U.S. at 738.

The record contains no evidence that the defendants acted maliciously or sadistically in subjecting Washington to the restraint chair. As noted above, Washington was actively combative during the extraction and resisted being restrained by the CERT officers. Immediately after Washington was removed from his cell, he was transferred to the shower, however, Washington refused to place his face in the water and to comply with the officer's instructions. Given Washington's continued uncooperative behavior throughout the extraction and subsequent shower (though the officers had already placed his arms and legs in restraints), he was not yet subdued and cooperative when placed in the restraint chair. Additionally, as noted above, Washington conceded that he was suicidal and disorderly, and thus we cannot conclude that there was a "clear lack of an emergency situation" which gave rise to the use of the restraint chair. Hope, 536 U.S. at 738. Because the event portrayed in the videotape showed a continuing episode and Washington remained uncooperative throughout the officers' use of force, we cannot conclude that the force used subjected Washington to a substantial risk of physical harm and unnecessary pain that served no penological justification. See id. at 737–38. The video confirms that a nursed assessed Washington's condition, while he was in the restraint chair, and indicated that there were no visible injuries except for swollen eyes.

6

Finally, Washington was restrained in the restraint chair for a total of five hours, within the eight-hour maximum permitted by prison regulations, and far less time than where this Court has found a constitutional violation. See, e.g., Young, 801 F.3d at 181–82 (ruling that the use of a restraint chair violated the constitution when a prisoner was kept in a restraint chair for 14 hours). Accordingly, on the facts of this case, the District Court's grant of summary judgment on this claim was proper.

To the extent that Washington's Fourteenth Amendment claim is based on his placement in the Restricted Housing Unit, we agree with the District Court that the defendants were entitled to summary judgment since Washington did not allege any atypical or significant hardship. See Sandin v. Conner, 515 U.S. 472, 486 (1995); Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months' disciplinary confinement "does not, on its own, violate a protected liberty interest as defined in Sandin"). Additionally, the District Court correctly concluded that, though Washington claimed that defendants violated his First and Fifth Amendment rights, he failed to allege any facts that could support either a First or Fifth Amendment violation, and therefore summary judgment was properly granted in favor of the defendants. Finally, the District Court properly granted summary judgment in favor of Defendants Wetzel, Wenerowicz, and Ondrejka on all claims. Washington's claims against these defendants are not based on personal involvement, as required to establish liability in a § 1983 claim; they are based solely on the operation of respondeat superior. See Rode v. Dellarciprete, 845 F.2d 1195, 1207–08 (3d Cir. 1988).

For the foregoing reasons, we will affirm the judgment of the District Court.[5]

Washington's motions for appointment of counsel, his motion for an emergency phone conference, and his motion for an order compelling discovery are denied.

---

[5] To the extent that Washington seeks to challenge the District Court's order denying his first motion for reconsideration, we conclude that the District Court did not abuse its discretion in denying Washington's motion. Washington did not set forth grounds for reconsideration, such as an intervening change in controlling law, new evidence, or a need to correct a clear error of fact or law or prevent manifest injustice. See Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010).