**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4379
_____

AMY WEBER, Individually,
and as Parent, Natural Guardian
and Next Friend on behalf of K.A., a Minor

v.

FRANCES A. MCGROGAN, Individually and as a STATE
actor Judge for the Bergen County Family Court; PETER J.
MELCHIONNE, individually and as a STATE actor Judge
for the Bergen County Family Court; KENNETH J.
SLOMIENSKI, individually and as a STATE actor Judge for
the Bergen County Family Court; GARY N. WILCOX,
individually and as a STATE actor Judge for the Bergen
County Family Court; BONNIE J. MIZDOL, individually and
as a STATE actor Judge for the Bergen County Family Court;
PETER DOYNE, individually and as a STATE actor Judge
for the Bergen County Family Court; MARCELLE NICOLE,
individually and as a STATE actor Law Clerk for the Bergen
County Family Court; GOVENOR CHRIS CHRISTIE,
individually and as STATE actor Governor; SENTATOR
ROBERT MENENDEZ, individually and as STATE actor
Senator; SENATOR NICHOLAS SACCO, individually and
as STATE actor Senator; STATE OF NEW JERSEY;
BERGEN COUNTY FAMILY COURT OF THE

SUPERIOR COURT OF NEW JERSEY; ANTHONY D'URSO; JOAN GLAESER; BRETT BILLER; RICHARD COCO; KYONGOK KIM; JULIA DEBELLIS; NINA AGRAWAL; JEMOUR MADDUX; SARA MICHAELOWLSKI; PATRICIA SERMABIKIAN; FAMILIES FIRST; VICTORIA MADDEN; CHILDRENS AIDS AND FAMILY SERVICES; RACHEL POLAN; PATRICIA KRYGER; MARIA MAHTANI; CLAIRE ABEL; DIVISION OF CHILD PROTECTION AND PERMANENCY f/k/a DYFS; ATTORNEY GENERAL NEW JERSEY; STATE OF NEW JERSEY BOARD OF ETHICS; MONIQUE D'ERRICO, Esq.; MARY ZEC, Esq.; CARYN STALTER, Esq.; YLLINI TORRES; DOLORES COUNNEELY; RUTH BAZZANO; LOURDES NUNEZ; DANILLE GONZALEZ; LUIS PADIERNA; CYNTHIA MCWHITE; VICTORIA SUMMERS; JOAN TAKACS; MARTHA VAZQUEZ; MARIA GONZALEZ; NICOLLE MILLER; HAYDEE ZAMORA-DALTON; KELLY NESTOR; LUKE DRUMMOND; MARISOL NARANJO; JESSICA MULLIGAN; BERGEN COUNTY DIVISION OF FAMILY GUIDANCE; JUDITH LEGGET; RESSA VILLANI; DENNIS CHETEYAN; DR. DANIEL BROMBERG; DR. DONNA LOBIONDO; SAMSIRI SOSTRE; VIVIAN CHERN SHNADIMAN; ROBERT LATIMER; DR. HAROLD GOLDSTEIN; JACQUELINE KIM SZABO; MICHAEL LAMOLINO, Esq.; ROBYN VEASEY; ALL ABOUT ME LEARNING CENTER; MICHAEL CULVER; CONNIE CULVER; DOES #1 THRU 33; AUDREY HEPBURN CHILDREN'S HOUSE; KEYSHA TYSON; KEITH J. YONOS, Real Party of Interest

Amy Weber,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-14-cv-07340)
District Judge: Hon. Claire C. Cecchi
_____

Argued June 5, 2019

Before: JORDAN, BIBAS, and MATEY, *Circuit Judges*.

(Filed: September 12, 2019)

Christopher T. Zirpoli, Esq.     **[ARGUED]**
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
    *Court Appointed Amicus Curiae on behalf of Appellant*

Gurbir S. Grewal
Thomas P. Lihan, Esq.
Michael R. Sarno, Esq.          **[ARGUED]**
Office of the Attorney General
Division of Law
25 Market Street
Richard J. Hughes Justice Complex
Trenton, New Jersey 08625
    *Attorneys for Appellees Frances A. McGrogan,*
    *individually and as a STATE Judge for the Bergen*
    *County Family Court*

3

Daniel R. Esposito, Esq.
Buckly Theroux Kline
707 State Road
Princeton, NJ 08540
    *Attorney for Appellees Audrey Hepburn Children's*
    *House, Brett Biller, Richard Coco, Anthony D'Urso,*
    *Joan Glaeser, Kyongok Kim, Jemour Maddux, Sara*
    *Michaelowlski, Patricia Sermabikian*

Robert E. Levy, Esq.
Scarinci & Hollenbeck
1100 Valley Brook Avenue
P.O. Box 790
Lyndhurst, NJ 07071
    *Attorney for Appellee Senator Robert Menendez,*
    *individually and as State actor Senator*

Cyndee L. Allert, Esq.
Elizabeth A. Farrell, Esq.
Dughi Hewit & Domalewski
340 North Avenue East
Suite 2
Cranford, NJ 07016
    *Attorneys for Appellees Julia DeBellis, Nina Agrawal,*
    *Robert Latimer*

Paul J. Soderman, Esq.
Suite 202
157 Eagle Rock Avenue
Roseland, NJ 07068
    *Attorney for Appellee Families First, Victoria Madden*

Darrell M. Felsenstein, Esq.

Wells Jaworski & Lebman
12 Route 17 North
P.O. Box 1827
Paramus, NJ 07653
*Attorney for Appellees Childrens Aids and Family Services, Rachel Polan, Patricia Kryger, Maria Mahtani, Claire Abel*

Julien X. Neals, Esq.
Robert N. Schwartz, Esq.
Office of Bergen County Counsel
One Bergen County Plaza
Room 580
Hackensack, NJ 07601
*Attorneys for Bergen County Division of Family Guidance, Judith Legget*

William T. McGloin, Esq.
Connell Foley
56 Livingston Avenue
Roseland, NJ 07068
*Attorney for Dr. Daniel Bromberg, Dr. Donna LoBiondo*

William J. Buckley, Esq.
Thomas N. Gamarello, Esq.
Schenck Price Smith & King
220 Park Avenue
P.O. Box 991
Florham Park, NJ 07932
*Attorneys for Vivian Chern Shnadiman*

Melissa J. Brown, Esq.

Marks O'Neill O'Brien Doherty & Kelly
535 Route 38 East
Suite 501
Cherry Hill, NJ 08002
    *Attorney for Jacqueline Kim Szabo*

_____

OPINION
_____

MATEY, *Circuit Judge*.

Sometimes a difficult journey produces fresh insights, like when the "[l]ongest way round is the shortest way home."[1] In this appeal, Amy Weber argues persuasively that her complaint was erroneously dismissed. But rather than decide that question, we must dismiss the appeal for lack of a final order. That result is regrettable, but not unexpected, as finality is a necessary predicate to appellate review. Indeed, an epic poem of problems often follows when charting any other course. Our opinion seeks to eliminate some of that confusion while reminding litigants and courts that following the rules ensures predictable outcomes and effective results.

---

[1] JAMES JOYCE, ULYSSES 309 (Gabler ed., Random House, Inc. 1986) (1922).

## I. The Proceedings Before the District Court

### A. Weber Begins Her Odyssey

We begin our journey in 2014 when Appellant Amy Weber sued, *pro se*, nearly sixty defendants in the United States District Court for the District of New Jersey.[2] Weber's complaint stems largely from her experiences dealing with New Jersey public officials during a child custody matter, a controversy that involved litigation in the New Jersey state courts. When she filed her federal complaint, Weber was also appealing an adverse custody decision to the Appellate Division of the New Jersey Superior Court. The specter of this seemingly related state court action caused the District Court to consider the prudential limitations on subject-matter jurisdiction in the abstention doctrines. Following briefing, the Magistrate Judge issued a Report and Recommendation that Weber's claims be dismissed under the principles of *Rooker-Feldman* or *Younger*.[3] And that is where the story begins its journey into mystery.

---

[2] We thank the court-appointed amicus curiae appearing on behalf of the appellant for his able assistance.

[3] Both doctrines are narrow prudential exceptions to federal jurisdiction. *Rooker-Feldman* instructs courts to refrain from matters inviting direct review of state-court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *Younger* abstention seeks to avoid interference with ongoing state proceedings. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77–78 (2013).

**B. Between Scylla and Charybdis**

The District Court issued a Memorandum Opinion adopting the Report and Recommendation, accompanied by an order dismissing Weber's complaint without prejudice and permitting her thirty days to amend. In a letter dated June 27, 2016, Weber filed a notice of appeal with this Court. That notice prompted a July 21, 2016 letter by our Circuit Clerk advising Weber that her appeal "will be submitted to a panel of this Court for possible dismissal due to a jurisdictional defect" because her complaint had been dismissed by the District Court without prejudice and thus "may not be reviewable at this time by a court of appeals." The Clerk's letter enclosed a copy of 28 U.S.C. § 1291 and summarized the holding in *Borelli v. City of Reading*, 532 F.2d 950 (3d Cir. 1976) (per curiam), stating that, "to be final, order of dismissal must be with prejudice; order dismissing without prejudice contemplates leave to amend and is not appealable unless plaintiff elects to stand on complaint . . . ." Multiple defendants echoed the same jurisdictional concern in contemporaneous letters to this Court.

In response, Weber wrote to the District Court advising that she had "taken [her] case into appeal" and "kindly requesting for your final court order regarding my case . . . to allow me to proceed accordingly." Receiving no response, Weber wrote to this Court and asked to withdraw her appeal. The Clerk of the Court advised Weber in a new letter that if she wished to withdraw her appeal, she must file a motion or the case would move forward.

And so Weber moved to dismiss her appeal to prevent, she wrote, "more 'jurisdictional defects.'" This Court granted her motion.

### C. Flight from the Cave of Polyphemus

With Weber's appeal dismissed, some defendants began to wonder where the case now stood. So, on November 29, 2016, counsel for a few wrote the District Court that Weber's thirty-day period to amend her complaint following the June 9 dismissal without prejudice "has long passed" and that defendants "seek dismissal with prejudice."[4] The next day, the District Court made an electronic entry on the docket that stated: "Civil Case Terminated. (Clerk's Note: Please see Order Dkt. Entry #119) (sr, ) (Entered: 11/30/2016)[.]"[5] Believing herself free from the jurisdictional defects of her earlier appeal, Weber filed a new notice of appeal on December 15, 2016. That appeal is before us today and turns on a surprisingly elusive question: is there a final order of the District Court dismissing Weber's complaint?

### II. There Is No Appellate Jurisdiction Absent A Final Order

### A. The Statutory Framework

As with every case, we begin by assessing our jurisdiction. Congress has given the federal circuit courts

---

[4] The letter referenced a phone call stating "[m]y office contacted Your Honor's chambers and was advised that Your Honor would not require a formal motion." Counsel accompanied a draft order of dismissal with prejudice for the District Court's convenience.

[5] Docket entry "#119" referred to the June 9 order that dismissed the complaint without prejudice.

jurisdiction over "appeals from all final decisions of the district courts[.]" 28 U.S.C. § 1291. A "final decision" is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). The requirement of finality is often described as serving "the important purpose of promoting efficient judicial administration." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981). A final decision or judgment is "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy, except for . . . enforcement of the judgment." *Final Judgment*, BLACK'S LAW DICTIONARY (10th ed. 2014). That may well mean a party must delay appellate review; indeed, "the possibility that a ruling may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirement imposed by Congress." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985). The benefits of certainty are superior to the costs, and courts "routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108–09 (2009). Both the command of Congress and the guidance of the Supreme Court direct "a healthy respect for the virtues of the final-judgment rule." *Id*. at 106.

## B. Weber's Arguments

Recall that while Weber filed two separate notices of appeal, only the second is before us now. So, we must consider what, if any, final order supports that appeal. Weber offers two possibilities: first, the November docket entry "terminating" her case, and second, the June order of dismissal without prejudice. We consider each, finding the first ends up running

10

aground on the text of the Federal Rules, while the second asks us to stray too far from the route prescribed by Congress.

### 1. Utility Events Are Not Orders

Weber first argues the District Court's November 30, 2016 docket entry constituted a final appealable order, making her second notice of appeal timely. Our opinion in *Witasick v. Minnesota Mutual Life Insurance Co.*, reasons otherwise. 803 F.3d 184 (3d Cir. 2015). In *Witasick*, we explained the differences between the three distinct types of case-related electronic entries on a federal case docket: text orders, utility events, and minute entries.[6] Each has a distinct purpose. First, a text order "as its name suggests, is an order of the court, with specific text granting, denying, or otherwise resolving a motion or, ultimately, a case" including, among other purposes, "to set a hearing, order briefing" and "to rule on substantive motions . . . ." *Witasick*, 803 F.3d at 189. Text orders are most significant because they "contain an electronic signature of a judge." *Id.* By contrast, a "'utility event' is an entry which records an event or action in the life of a case." *Id.* And mere "minute entries reflect time spent in court[,]" including a case management conference or contempt hearing. *Id.*

Weber tries to distinguish *Witasick* because the November 30 docket entry includes the note "(Clerk's Note:

---

[6] The "docket" is "[a] formal record in which a judge or court clerk briefly notes all the proceedings and filings in a court case." *Docket*, BLACK'S LAW DICTIONARY (10th ed. 2014).

Please see Order Dkt. Entry #119)," a reference to the June 9 order of dismissal without prejudice. That reference, Weber reasons, eliminates any doubt about the entry's meaning. Perhaps, but it's not a final order. Replacing the clarity of a signed, labeled order with inferences drawn from other entries is the very danger we sought to avoid in *Witasick*.[7] These distinctions matter because as we noted in *Witasick*, "utility events . . . are not orders of the district court nor are they signed by a judge. As such, they cannot serve as a foundation for an appeal." *Id.* at 189. The November 30 docket entry is a utility event, and Weber cannot rely on the entry.

## 2. "Standing on the Complaint"

Weber also argues that the notice filed in December was a timely appeal from the District Court's June 9 order dismissing her complaint without prejudice. The problem with that theory seems obvious: a dismissal without prejudice and with leave to amend isn't a final order. But it turns out things are somewhat murky because courts have found opportunities to stray from the plain meaning of finality. From time to time, and usually citing noble goals, circuit courts have side-stepped the finality requirement of § 1291, relying on the oft-quoted

---

[7] A comparison with the June 9, 2016 electronic entry corresponding to the order dismissing Weber's complaint without prejudice highlights the difference. That entry reads: "ORDER dismissing Plaintiff's Complaint w/out prejudice, and Plaintiff shall have 30 days in which to file an Amended Complaint that cures the deficiencies set forth by the Court in its corresponding Opinion. Signed by Judge Claire C. Cecchi on 6/9/16. (sr, ) Modified on 6/13/2016 (jl). (Entered: 06/10/2016)." (D.C. ECF No. 119.)

12

preference for a "practical rather than a technical construction" of the law. *Caver v. City of Trenton*, 420 F.3d 243, 261 (3d Cir. 2005) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). And so, exceptions sprouted like dandelions, including "practical finality," "effectively out of court," "pragmatic finality," "marginal finality," and even the "death-knell" doctrine. *See* 19 *Moore's Federal Practice*, §§ 201.11, 202.08–10 (Matthew Bender 3d Ed.). Not surprisingly, "[t]he law of federal appellate jurisdiction is widely regarded as a mess." Bryan Lammon, *Finality, Appealability, and the Scope of Interlocutory Review*, 93 WASH. L. REV. 1809, 1810 (2018).

Seizing on this opening, Weber explains that the June 9 order dismissing her complaint without prejudice could not become final until the expiration of the thirty-day period for her to amend. So, she argues, the June 9 order "matured into a final decision" on July 9, 2016. (Amicus Br. at 21.) And her argument isn't novel, because our circuit has created the "stand on the complaint" doctrine, to find or foreclose appellate jurisdiction in cases involving a complaint dismissed without prejudice and without a final order from the district court. Such dismissals should, under § 1291, fail the finality requirement. The "stand on the complaint" doctrine, and its offspring, hold otherwise. Which brings us to *Borelli v. City of Reading*, the case cited in the Circuit Clerk's July 26, 2016 letter.

*Borelli* involved a dispute over a redevelopment project. Both sides moved for summary judgment. *Borelli*, 532 F.2d at 951. Based on the defendants' motion, the district court determined that the plaintiff lacked standing. *Id.* The court thus dismissed the complaint without prejudice, and the plaintiff appealed. *Id.* In a short per curiam opinion dismissing the

13

matter for lack of jurisdiction, we recited the basic rule that "an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action." *Id.* But then, we added the comment that "[o]nly if the plaintiff cannot amend or declares his intention to *stand on his complaint* does the order become final and appealable." *Id.* at 951–52 (emphasis added). *Borelli* explained that when a plaintiff prefers not to amend, he "may file an appropriate notice with the district court asserting his intent to stand on the complaint, at which time an order to dismiss the action would be appropriate." *Id.* at 951 n.1. That statement is not remarkable; a plaintiff is always free to decline an invitation to amend a seemingly defective complaint and, instead, seek a final appealable order.[8]

Nothing in *Borelli* suggests an exception to the statutory requirement of finality, nor, of course, would such a re-writing of a statute be possible. Yet, in time, our decisions have dropped the important second step of *Borelli*—seeking and

---

[8] The phrase "stand on the complaint" traces to at least the early twentieth century where the Supreme Court, while summarizing the procedural posture of a case, noted instances when a plaintiff decided to "stand on the complaint" rather than amend. *See, e.g.*, *United States v. John Barth Co.*, 279 U.S. 370, 373 (1929); *Schodde v. Twin Falls Land & Water Co.*, 224 U.S. 107, 114 (1912); *N. Pac. Ry. Co. v. Slaght*, 205 U.S. 122, 129 (1907); *Bockfinger v. Foster*, 190 U.S. 116, 119 (1903); *Filhiol v. Maurice*, 185 U.S. 108, 108 (1902); *Union Refrigerator Transit Co. v. Lynch*, 177 U.S. 149, 151 (1900). But those cases came with a final order of dismissal.

14

receiving a final order—and instead allowed the mere *intent* to forego further amendment to satisfy finality. *See Berke v. Bloch*, 242 F.3d 131, 135 (3d Cir. 2001). As might be expected from such a protean appellate standard, basic questions on the contours of this doctrine are elusive, leading us to concede that "[w]e cannot discern from our prior cases a clear rule for determining when a party has elected to stand on his or her complaint." *Hagan v. Rogers*, 570 F.3d 146, 151 (3d Cir. 2009). As Weber seeks to rely on, and even expand this theory,[9] we organize our existing rules and decisions before reaching her arguments.

### a. Intent-Based Exceptions Replacing Final Orders

Our decision in *Shapiro v. UJB Fin. Corp.*, began the loosening of the final order rule that *Borelli* had reinforced. 964 F.2d 272 (3d Cir. 1992). In *Shapiro*, the district court invited the plaintiffs to amend their complaint, warning that if nothing arrived in thirty days the court would consider dismissal. *Id.* at 278. The plaintiffs advised the district court they would not amend, but the court never entered a final order. *Id.* So, citing *Borelli*, the defendants "contend[ed] that this was not enough. They maintain[ed] that [the Court] lack[ed] jurisdiction because plaintiffs failed to obtain an explicit dismissal with prejudice." *Id.* We disagreed, reasoning "[i]t seems clear that the district court planned to dismiss with prejudice any claims not amended. Requiring plaintiffs to return to the district court now would be a wasteful elevation of form over substance." *Id.* *Shapiro* thus jettisoned the second prong of *Borelli* and can be

---

[9] While Weber does not invoke the doctrine by name, she still advocates for use of its underlying principle—for us to find appellate jurisdiction from a non-final order.

15

read as collapsing the jurisdictional inquiry into a single question: whether a plaintiff has "formally" stood on the complaint. *Id.*

Shortly after, the test relaxed again in *Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d Cir. 1992). There, the district court dismissed the complaint and allowed thirty days to amend. *Id.* at 851 n.5. The plaintiff not only declined to amend but declined to file anything with the district court. *Id.* Rather, the plaintiff filed a notice of appeal before the thirty days elapsed. *Id.* We concluded that was enough under *Borelli* and *Shapiro*, finding that "by failing to move to amend within the 30 days granted by the court, [the plaintiff] elected to stand on his complaint." *Id.*

*Shapiro* and *Batoff* do not rest easily alongside *Borelli*'s simple statement that a clear and unequivocal declaration of intent to skip amendment and seek an order of dismissal satisfy § 1291. Our decision in *In re Westinghouse Securities Litigation*, 90 F.3d 696 (3d Cir. 1996), eases some of that tension. There, following a dismissal without prejudice, the plaintiffs filed a "Notice of Intention to Stand on Second Consolidated Amended Class Action Complaint," explaining that after "carefully weigh[ing] the merits of repleading against seeking immediate appellate review" they "respectfully give notice of their intention to stand on the Complaint." *Id*. at 703. Synthesizing *Borelli* and *Shapiro*, we held that "when plaintiffs elected to stand on the second amended complaint rather than replead . . . the remaining claims were dismissed with prejudice, and the case was closed in the district court[,]" leaving "no doubt that the district court's dismissal of the case with prejudice was a reviewable, final order." *Id*. at 705.

16

Lack of doubt, therefore, emerges as the key to finding finality through the "stand on the complaint" doctrine. Equating finality with clear intent also grounds our decisions inferring a plaintiff's decision to "stand on the complaint" based on inaction after entry of a self-executing order. For example, in *Berke v. Bloch*, the district court "closed" the case on the docket, but dismissed "without prejudice to the right, upon good cause shown, within 60 days, to reopen the action" if the parties could not reach a settlement agreement. 242 F.3d at 134–36. When the plaintiffs filed an appeal more than thirty days after the sixty-day period to reopen the case had run, we found the appeal untimely because plaintiffs' failure to act is "akin to standing on the[] complaint." *Id.* at 135. *Berke* reasoned that a non-final dismissal becomes final when it provides clear instructions that the order will "ripen[]" into a final order on the defined date if a plaintiff takes no action in response. *Id.* at 135.

With these decisions as our guide, two principles relevant to Weber's appeal emerge. First, as in *Berke*, a "self-effectuating" order is one that directs a party to take some action to cure a defective complaint by a defined date and provides express notice that it will then automatically produce a final order of dismissal when the time to amend runs out. Second, as in *Westinghouse*, a clear and unequivocal intent to decline amendment and immediately appeal that leaves no doubt or ambiguity can allow us to exercise jurisdiction. Following these decisions as we must, we apply each to Weber's actions and conclude that we do not have appellate jurisdiction.

17

### b. The Stand on the Complaint Doctrine Does Not Aid Weber's Appeal

Unlike our prior cases, Weber's actions in the District Court leave ample room for doubt. In contrast to *Berke*, the District Court's June 9 dismissal without prejudice was not "self-executing"; while it provided thirty days' leave to file an amended complaint, it lacked any language converting the dismissal to a final order at the end of the period. And unlike *Westinghouse*, Weber did not submit a clear and unequivocal declaration of intent to "stand on her complaint." True, when warned by the Circuit Clerk that her appeal could be dismissed for lack of jurisdiction, she appropriately notified the District Court of her plan to "take[] [her] case into appeal" and sought a final order. Had the District Court issued an order at that time, the judgment would be final under § 1291 and we would have jurisdiction over the appeal. *See In re Westinghouse Sec. Litig.*, 90 F.3d at 703–05. Instead, when Weber received no response, she moved to withdraw her appeal, perhaps fearing dismissal on jurisdictional grounds as the Circuit Clerk warned. Appellees were similarly concerned about the status of the action, as they too sought a final order from the District Court. Perhaps our own case law on the final order requirement of § 1291 abetted this ambiguity and the parties' confusion. But whatever our role, we remain bound by § 1291 not to accept jurisdiction absent a final order under these circumstances. Weber's indecision does not show clear and unequivocal intent, and the "stand on the complaint" doctrine cannot rescue the lack of a final order given her ambiguous actions.[10]

---

[10] This conclusion fits with the approach taken by some circuits. In *WMX Technologies, Inc. v. Miller*, the Ninth Circuit

Even more to the point, our consideration of the "stand on the complaint" doctrine highlights the difficulty of basing appellate jurisdiction on deeds rather than words. We caution against traveling this circuitous route mindful that unless properly constrained, the "stand on the complaint" doctrine will continue to lure courts away from § 1291. It is, and always was, a narrow doctrine demanding sparing use under our duty to comply with the congressional grant of jurisdiction and the federal rules of procedure.[11] Indeed, the only practice that

reviewed an appeal from a dismissal without prejudice with thirty days' leave to amend. 104 F.3d 1133 (9th Cir. 1997) (*en banc*). The plaintiff "did not amend, did not tell the district court that it would not do so, and did not obtain a final order of dismissal. It simply appealed." *Id.* at 1134. The court dismissed the appeal for lack of jurisdiction, explaining "[w]e now specifically rule that a plaintiff, who has been given leave to amend, may not file a notice of appeal simply because he does not choose to file an amended complaint. A further district court determination must be obtained." *Id.* at 1136; *see also Sapp v. City of Brooklyn Park*, 825 F.3d 931, 934 (8th Cir. 2016) ("[A] plaintiff may not appeal the dismissal of a complaint when the district court grants the plaintiff leave to amend his pleading.") (internal quotations omitted); *CompuServe Inc. v. Saperstein*, 172 F.3d 47 (6th Cir. 1999) (unpublished table decision) (citing *Borelli* and observing, "[t]he law is clear when the district court expressly grants the dismissed party leave to amend. In such situations the dismissal is not final, and that order may not be appealed.").

[11] Take a party seeking to dismiss a claim pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply

19

avoids these perils comes from the guidance offered in *Borelli* more than four decades ago:

> Since it may be difficult to determine whether the district court thought an amendment was possible and whether the plaintiff is willing or able to amend, we suggest that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if a timely amendment is not forthcoming within that time. If the plaintiff does not desire to amend, he may file an appropriate notice with the district court asserting his intent to stand on the complaint, at which time an order to dismiss the action would be appropriate.

with a court order. That is precisely the remedy sought by defendants here in their November 29, 2016 correspondence to the District Court. We have specified a rigorous six factor test to determine whether to dismiss a case under Rule 41(b). *See Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 132 (3d Cir. 2019). Indeed, in *Hildebrand*, we vacated the dismissal of a suit after the docket idled for three years. *Id.* at 138. And the District Court here would have needed to perform the same analysis had Weber objected to a motion to dismiss with prejudice. We use a similar multi-factor test to determine whether we have jurisdiction from an appeal under the collateral order doctrine. *See Gillette v. Prosper*, 858 F.3d 833, 839 (3d Cir. 2017). It is hard to reconcile our vigilant scrutiny of final orders in these areas with our tolerance for non-final dismissals.

*Borelli*, 532 F.2d at 951 n1. We reiterate that admonition today.

### 3. There Is No Separate Document Triggering the Time to Appeal

Weber's desire to use the June 9 order, and the thirty days for amendment that followed, encounters a separate problem under the Federal Rules. Some background on the calculation of the time to appeal is helpful. Federal Rule of Civil Procedure 79 requires docket entries for certain actions including orders, verdicts, and judgments. Rule 58(b) requires prompt entry of each because they start the clock for the filing of an appeal. And Rule 58(a) requires a separate document for final judgments. Federal Rule of Appellate Procedure 4(a)(1)(A) then sets out the time to appeal a civil matter, generally thirty days after entry of the judgment or order. So, what happens when, as here, there is no separate document? Federal Rule of Civil Procedure 58(c)(2)(B) steps in to enter judgment—and begin the time to appeal—when 150 days have run from the docket entry. Civil Rule 58 and Appellate Rule 4 "are designed to work in conjunction . . . to ensure that appeal time does not linger on indefinitely." FED. R. CIV. P. 58 advisory committee's note to 2002 amendment.

Recall Weber's argument that the June 9 order "matured into a final decision" one month later. (Amicus Br. at 21.) But as we already know, the District Court entered nothing on the docket on that date. Lacking the required separate document under 58(c)(2), she turns to Rule 58(c)(2)(B) to give her another 150 days, which, combined with the thirty days to file her appeal, makes her December 15 notice timely. This argument, however, invites us to add pages to procedural

treatises by introducing a new doctrinal exception. We conclude instead that the plain text of Rule 58 controls.

Judgment arises under Rule 58(c)(2)(B) when "150 days have run *from the entry in the civil docket*." FED. R. CIV. P. 58(c)(2)(B) (emphasis added). Simply put, the predicate action thus required to begin the 150-day clock is an entry in the civil docket. Even if the June 9 order *could* qualify, that leaves Weber's appeal a few days late under Federal Rule of Appellate Procedure 4(a). Adding the extra thirty-day amendment period would do the trick, but to allow Weber this concession we would need to read the words "entry in the civil docket" out of Rule 58. Doing so would ignore the text of the rule and, soon enough, add fresh frustration to litigants and courts. As there was no final order on July 9, and thus no docket entry either, Rule 58 brings us no closer to the port of jurisdiction.

## III. Weber's Case Remains Pending in the District Court

At long last, Weber finishes her odyssey like the fabled hero: back where she began. She has a live action still pending before the District Court. Sadly, all of this was avoidable proving that "[t]he undesirability of useless delays in litigation is more than offset by the hazards of confusion or misunderstanding as to the time for appeal." *Jung v. K. & D. Mining Co.,* 356 U.S. 335, 337 (1958). Our conclusion today means that Weber can still appeal her case by filing a notice of appeal after the District Court enters a final order. While both parties invite us to tuck Weber's case into one of our self-created doctrines or slip it into a new, narrow exception, we decline to depart from the requirements of the rules and the statutes, confident that any efficiency gained today will drown

22

in a sea of ambiguity tomorrow. The need for restraint in expanding exceptions to the rule of finality "has acquired special force . . . with the enactment of legislation designating rulemaking, 'not expansion by court decision,' as the preferred means for determining [appealability]."[12] *Mohawk*, 558 U.S. at 113 (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 48 (1995)). Such an allowance by Congress "warrant[s] the Judiciary's full respect," *Id.* at 114 (quoting *Swint*, 514 U.S. at 48), and we "resist[] efforts to stretch § 1291 to permit appeals of right that would erode the finality principle and disserve its objectives." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 (2017). Frustrating as it may be, Weber's appeal is simply premature.

Weber brings her appeal from a non-final order of the District Court. Because we are without jurisdiction under 28 U.S.C. § 1291, we cannot consider other independent bases raised by Appellees to affirm the District Court's dismissal. And though we harbor doubts about the District Court's dismissal under the *Rooker-Feldman* and *Younger* abstention doctrines, this too we cannot consider. We will therefore dismiss the appeal for lack of jurisdiction.[13]

---

[12] Under 28 U.S.C. § 2072(c), the Supreme Court possesses the delegated authority to prescribe rules of procedure, including "rules that may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title."

[13] None of this is to imply that Weber's case has merit. That determination awaits another day.