**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3287
_____

SMART COMMUNICATIONS HOLDING, INC.; HLFIP HOLDING, INC., d/b/a Smart
Communications IP Holdings,
Appellants,

v.

GLOBAL TEL-LINK CORPORATION; COUNTY OF YORK; YORK COUNTY
PRISON; ADAM OGLE, in his official capacity as York County Prison Warden
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 1-21-cv-01708)
District Judge:  Honorable Jennifer P. Wilson

Argued October 19, 2023
_____

Before:  CHAGARES, Chief Judge, PHIPPS and CHUNG, Circuit Judges

(Filed December 22, 2023)

Phillip J. Closius **[ARGUED]**
William N. Sinclair
Silverman Thompson Slutkin & White
400 E Pratt Street
Suite 900
Baltimore, MD 21202

Matthew M. Haar
Saul Ewing
2 N Second Street

Penn National Insurance Plaza, 7th Floor
Harrisburg, PA 17101

Katrina M. Quicker
Quicker Law
900 Circle 75 Parkway
Suite 100
Atlanta, GA 30339

   Counsel for Appellants

Katherine M. Clemente
Greenberg Traurig
One Vanderbilt Avenue
New York, NY 10017

Brian T. Feeney **[ARGUED]**
Greenberg Traurig
1717 Arch Street
Suite 400
Philadelphia, PA 19103

   Counsel for Appellee Global Tel-Link Corporation

Bridget E. Montgomery
Adam M. Shienvold **[ARGUED]**
Eckert Seamans Cherin & Mellott
213 Market Street
8th Floor
Harrisburg, PA 17101

   Counsel for Appellees County of York, York County Prison, and Adam Ogle

_____

OPINION[*]
_____

CHUNG, <u>Circuit Judge</u>.

Plaintiffs Smart Communications Holding, Inc. and HLFIP Holding, Inc. (collectively, "Smart") competed with Global Tel-Link Corporation ("GTL") for an exclusive contract to provide inmate calling service at York County Prison ("YCP"), a prison operated by York County, Pennsylvania. In the end, York County contracted with GTL. Smart then sued GTL and multiple defendants affiliated with York County ("York Defendants") claiming, among other things, that: 1) GTL and the York Defendants violated Section 1 of the Sherman Antitrust Act by blocking competition for inmate calling service at YCP through their exclusive contract; and, 2) GTL committed Pennsylvania torts when it defamed Smart to York County and YCP, causing York County to break off negotiations with Smart. The District Court granted Defendants' motion to dismiss as to all of Smart's claims.

We agree with the District Court that Smart's allegations do not state a federal antitrust claim. We remand Smart's state tort claims for the District Court to determine whether the Complaint sufficiently pleads the elements of those torts. Accordingly, we will affirm the District Court's ruling in part, vacate in part, and remand for further

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

consideration.

I.      BACKGROUND[1]

Inmate calling service ("ICS") refers to the telephone system that prisoners use to make calls outside the prison. YCP, like many other prisons, enters into exclusive ICS contracts. Under these contracts, a company provides ICS, collects fees from call recipients, and pays the prison a share of their fees as "commission." Joint App. ("JA") 79.

GTL (or its predecessor-in-interest) has been YCP's ICS provider for two decades, during which time the contract was renewed nine times. GTL is also a major player in the national ICS market. The Complaint alleges that GTL and its main competitor share at least eighty percent of the national ICS market.

Smart provides ICS, as well as mail-scanning and other services for the corrections environment. In an unrelated lawsuit, Smart sued York County and YCP for patent infringement, claiming that YCP's mail-scanning system infringed upon Smart's technologies. It was during negotiations to settle that patent-infringement lawsuit that Smart says it learned York County had an ICS contract with GTL that would soon expire. Smart immediately sent YCP's Warden, Clair Doll,[2] marketing materials about its own ICS offerings, followed shortly thereafter with proposed terms that Smart claims would

---

[1]    Because we write for the parties, we recite only facts pertinent to our decision.

[2]    Defendant Adam Ogle was substituted as a defendant in official capacity when he succeeded Warden Doll as YCP's Warden.

4

have doubled York County's commission while cutting user fees in half. In the weeks that followed, Smart met with Warden Doll and other YCP officials, provided more information about its services, and exchanged drafts of Smart's proposed terms with Warden Doll.

Smart alleges that, several weeks before the contract's expiration, GTL realized that it could lose the ICS contract and made defamatory statements in an attempt to dissuade YCP from moving forward with Smart. Smart alleges that GTL's outside counsel met with officials from York County and YCP and made "false claims and misrepresentations" about Smart. Id. at 84. Smart alleges three false statements:

> (1)     "Smart Communications had purchased a company named
>          Lattice and that, because of Smart Communications' alleged
>          arrangement with Lattice, if YCP proceeded to replace GTL's
>          phone equipment with Smart Communications' phone
>          equipment, GTL had a right to and would exercise its right to
>          seize Smart Communications' equipment based on an alleged
>          judgment that GTL had received against Lattice, thereby
>          leaving YCP without any communications services for the
>          duration of its potential contract with Smart
>          Communications." Id. at 85.
>
> (2)     "Smart Communications' Asserted Patent allegedly was
>          invalid and that the York Defendants should not settle the
>          Patent Litigation." Id.
>
> (3)     "Smart Communications was infringing multiple GTL
>          patents, and that GTL would sue Smart Communications and
>          immediately obtain an injunction to prohibit Smart
>          Communications from providing certain services that were
>          the subject of Smart Communications' proposal to York
>          County and YCP." Id.

Smart also alleges that after its meeting with York County and YCP, GTL's

5

outside counsel sent Smart a letter stating, among other things, that GTL believed that some of Smart's patents were invalid or infringed upon GTL's patents.

About a month before York County's contract with GTL was to expire, Smart still believed that its negotiations with York for the next ICS contract were proceeding well. Just days before the contract expired, Warden Doll continued to express interest in Smart's proposal and asked Smart for information to give the York County Commissioners, the body with authority to award the contract.

But Smart did not win the contract. York County renewed its contract with GTL on a month-to-month basis until it could finalize a new agreement with GTL. Ultimately, York County renewed its contract with GTL (the "new contract") for a five-year term with provision for two additional one-year renewals. The new contract also contained an early termination clause that required York County to pay GTL liquidated damages if it canceled the contract before the end of the five-year term. The financial terms of the new contract differed from those Smart had proposed and Smart alleges that its proposal would have resulted in more commission paid to York County with lower fees paid by call recipients.

After losing the contract bid, Smart filed a lawsuit in the United States District Court for the Middle District of Pennsylvania, suing GTL and three York Defendants—York County, YCP, and YCP's Warden, Adam Ogle, in his official capacity. Smart's Complaint brought four counts, three of which are relevant on appeal.

Smart's first count claimed that all Defendants violated Section 1 of the Sherman

6

Antitrust Act. This claim was based on Smart's allegation that the "exclusive dealing contract" between GTL and York County forecloses competition for ICS at YCP. Id. at 106.

Smart's second and third counts claimed that GTL violated Pennsylvania law through (1) tortious interference with Smart's prospective business relations; and, (2) unfair competition. Both claims were based on Smart's allegation that when GTL's outside counsel met with York County and YCP, GTL made "false and misleading statements" to sabotage Smart's potential contract. Id. at 111.

Defendants moved to dismiss. The District Court granted their motion and dismissed all claims at issue here without prejudice.[3] The District Court found that Smart failed to state a Sherman Antitrust Act claim because (1) it did not allege that Defendants suppressed competition within the relevant market; and, (2) its alleged injury did not establish antitrust standing. The District Court also found that Smart failed to state a claim for the two alleged state-law torts, largely because Smart did not adequately allege "independently actionable conduct" to support either claim. Id. at 43.

The District Court gave Smart twenty-one days to amend its Complaint, after which the Court would close the case. Smart let the twenty-one days run, and the Court

_____

[3]      The District Court found that Eleventh Amendment immunity barred Smart's claims against YCP and those portions of Smart's claims seeking money damages from Warden Ogle. Those claims or claim portions were dismissed with prejudice. The District Court also dismissed without prejudice a count claiming champerty and maintenance. Smart does not challenge those decisions here.

7

closed the case. Smart then appealed.

II.    DISCUSSION[4]

On appeal, Smart challenges the District Court's rulings dismissing its Sherman Antitrust Act claims and its state-law tort claims. We address each in turn.

A.    Sherman Antitrust Act Claims

Count One of Smart's Complaint claims that Defendants violated Section 1 of the Sherman Antitrust Act. That Section provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.

To state a Sherman Act claim, a plaintiff must allege both anticompetitive conduct and antitrust injury. ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 281 (3d Cir. 2012). Smart fails to allege both. It does so primarily because its claim conflates two different

---

[4]    The District Court had jurisdiction over Smart's Sherman Antitrust Act claims under 28 U.S.C. §§ 1331 and 1337. As to Smart's state-law claims, the District Court had supplemental jurisdiction under 28 U.S.C. § 1367 and diversity jurisdiction under 28 U.S.C. § 1332.

We have jurisdiction under 28 U.S.C. § 1291. The District Court dismissed several of Smart's claims without prejudice and its order was non-final. This order became final and, hence, appealable when Smart chose not to amend by the date set by the District Court. See Berke v. Bloch, 242 F.3d 131, 135 (3d Cir. 2001); Weber v. McGrogan, 939 F.3d 232, 240 (3d Cir. 2019). Moreover, after filing its initial notice of appeal, Smart notified the District Court that it intended to stand on its Complaint and requested entry of final judgment. The District Court then entered final judgment for Defendants and Smart filed a supplemental notice of appeal.

We review the dismissal de novo, accepting all well-pleaded allegations as true and drawing all reasonable inferences in favor of the non-moving party. See Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006).

8

products, which Smart refers to interchangeably as "ICS," when defining the relevant market. That is, Smart alleges that Defendants engaged in anticompetitive conduct in the product market for *ICS contracts*, a product that Smart acknowledges it competes to sell to prisons like YCP in a national market (we will refer to this product-geographic market combination as "the national market for ICS contracts"). But Smart argues it suffered antitrust injury in a different geographic market, limited to YCP, based upon a different product market, ICS itself; i.e., the market comprised of YCP inmates, and those with whom they communicate, actually using ICS services (we will refer to this product-geographic market combination as "the YCP ICS market").

Smart argues that GTL and YCP violated the Sherman Act because the new contract constitutes anticompetitive conduct. Its argument is primarily based on the duration of the contract, which Smart contends prevents it from competing for future ICS contracts for an unreasonable length of time. Smart does *not* argue against the exclusive nature of the contract, just against the five-year duration and other terms that generally reinforce the duration of the contract.

A long-term, exclusive contract is not *per se* unlawful; rather, the probable effect of such contracts must harm competition in order to be considered illegal exclusive dealing agreements under the Sherman Act. See ZF Meritor, 696 F.3d at 281. In ZF Meritor, LLC v. Eaton Corp., we found that multiple five-year contracts of "unprecedented length" were unlawful exclusive dealing contracts. Id. at 287. Our conclusion was based on a number of factors, including not only the contracts' duration,

9

but also the fact that the contracts collectively bound *every* purchaser in the product market and locked up 85% of all purchases therein. Id. at 286–89. The situation here is markedly different, involving a single purchaser whose purchasing power (either independently or through exclusive contracts) nowhere nears 85% of the national market for ICS contracts. Smart therefore does not allege anticompetitive conduct.

To avoid this conclusion, Smart argues that the relevant market is the YCP ICS market. But Smart's claim does not challenge the anticompetitive nature of the YCP ICS market at all. Indeed, Smart seeks to itself become the monopoly provider in the YCP ICS market.[5] Moreover, it is plain from Smart's Complaint that the product relevant to its antitrust claim is ICS contracts. An ICS contract is the product that Smart and GTL competed to sell to York and it is the product that Smart alleges Defendants blocked Smart from selling when they entered into the new contract. For these reasons, we reject Smart's assertion that its claim should be evaluated with respect to the YCP ICS market,

---

[5] Smart is right that YCP's ICS users can only purchase call services through YCP's chosen ICS provider. But Smart acknowledges that that monopoly is created because ICS users are in a correctional environment and are always bound to use the ICS provider selected by the facility. See, e.g., JA 98 ("The inmates of the YCP and those they wish to call—family, friends, attorneys, etc.—have no way to communicate by phone other than through the ICS offered by York County. Nor do they have any choice in ICS provider."). This aspect of the YCP ICS market distinguishes the case here from those cited by Smart in support of its argument that the geographic market should be comprised of YCP alone. In those cases, consumer demand could have been met by consumers' choice of providers but for the exclusive contract, whereas here it is not the contract, but the carceral environment itself, that prevents such choice. See Jefferson Par. Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 22 (1984); Oltz v. St. Peter's Cmty. Hosp., 861 F.2d 1440, 1447 (9th Cir. 1988). But see Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 478 (7th Cir. 1988).

10

rather than the national market for ICS contracts.

Even if we were to assume that the new contract unlawfully forecloses competition in the national market for ICS contracts, Smart's alleged antitrust injury fails as Smart again focuses on the YCP ICS market.[6] Antitrust injury means "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). Smart argues antitrust injury is established because GTL charges ICS users higher fees than Smart would have charged.[7] But this argument again confuses the two products of ICS. Smart's alleged injury is to buyers in the YCP ICS market (the non-competitive nature of which Smart does not challenge), not in the national market for ICS

---

[6] Some commentators have noted that the two concepts of anticompetitive conduct and antitrust injury, though distinct, are frequently conflated. See Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 335f (Aug. 2023). We note that the District Court's opinion and the briefing might have some measure of this. For example, the District Court considered Smart's argument that the provisions in the new contract that were designed to block it from competing "demonstrate[d] antitrust injury." JA 23. Similarly, Defendants argue that Smart does not allege antitrust injury because it does not properly allege that they acted anticompetitively in connection with the new contract. On the other hand, had Smart sufficiently alleged anticompetitive conduct in the national market, it is true that would also likely have established antitrust injury. ZF Meritor, 696 F.3d at 289. In any case, to move forward, Smart needs to allege antitrust injury flowing from anticompetitive conduct. For the reasons explained above, Smart fails to allege either.

[7] Smart's claim does not implicate, so we do not consider, whether the noncompetitive nature of the YCP ICS market is unlawful. Cf. Arsberry v. Illinois, 244 F.3d 558 (7th Cir. 2001) (suit brought by ICS users themselves); Daleure v. Kentucky, 119 F. Supp. 2d 683 (W.D. Ky. 2000) (same).

contracts—the relevant market for its claim.  Those allegations are thus insufficient to establish antitrust injury.

Because Smart has not sufficiently alleged anticompetitive conduct nor antitrust injury, we will affirm the District Court's ruling dismissing Smart's Sherman Antitrust Act claim against all Defendants.

B.      Pennsylvania Tort Claims

While Smart's allegations are insufficient to state a claim under federal antitrust law, we find that Smart's tort claims warrant further analysis by the District Court.

Smart claims GTL committed two torts: tortious interference with prospective business relations and unfair competition.  In analyzing the tortious-interference claim, the District Court recognized that, absent wrongful conduct, GTL's alleged conduct was privileged or justified because competitors can "interfere with others' prospective contractual relationships."  JA 37 (quoting Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 215 (3d Cir. 2009)).  Similarly, the District Court noted that for its unfair-competition claim to survive, Smart needed to allege an actionable unfair method of competition.

Smart argued that it had pled wrongful conduct, in the form of unfair competition, sufficient to foreclose GTL's assertions of privilege and justification at this early stage. Unfair competition, however, was also the tort Smart alleged at Count Three.  To support Count Three, Smart argued that the unfair method of competition employed by GTL was

12

its tortious interference. The District Court rejected these arguments[8] since neither claim could stand on its own and concluded that Smart needed to allege *independently* actionable wrongful conduct as to each claim, rather than each claim relying upon the other.[9] JA 42–43.

Smart contended that it also stated "independently actionable conduct" for both torts through its allegation that GTL defamed it. JA 109–110. The District Court rejected this contention and found that the allegations in Smart's Complaint were inadequate to plead defamation.

When evaluating whether a plaintiff has stated a claim, we "begin by taking note of the elements a plaintiff must plead." Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009). After identifying the elements of a claim, we evaluate the plaintiff's allegations using a two-step approach. See id. at 679. First, we identify and reject all conclusory allegations. Id. Then, we consider whether the remaining allegations plausibly state a claim for relief. Id.

Pennsylvania statute provides the elements of a defamation claim. See 42 Pa. Consol. Stat. § 8343.[10] The first element—and the one the District Court focused on—is

---

[8]  Smart does not raise these arguments here.

[9]  We express no opinion as to the full requirements to state a claim for either tort under Pennsylvania law—which neither the District Court nor the parties discuss completely.

[10]  The District Court analyzed whether Smart pled facts sufficient to allege defamation and did not decide whether, under Pennsylvania law, Smart had "to actually

13

"[t]he defamatory character of the communication." Id. § 8343(a)(1). Pennsylvania courts interpreting this element have explained that to be defamatory, a statement must be more than "annoying and embarrassing" to the plaintiff. Scott-Taylor, Inc. v. Stokes, 229 A.2d 733, 734 (Pa. 1967). Rather, it must be the kind of statement that "tends … to deter third persons from associating or dealing with" the plaintiff. Birl v. Phila. Elec. Co., 167 A.2d 472, 475 (Pa. 1960). The District Court rejected Smart's allegations regarding the "defamatory nature of GTL's remarks [as] conclusory." JA 40. Our view, however, is that Smart does allege non-conclusory facts on this point.

Smart alleges that in order to make York County drop its negotiations with Smart, GTL made multiple false statements to York County and YCP telling them that: pursuant to a judgment it had, it would seize Smart's equipment that would be installed to fulfill the ICS contract at YCP; Smart's patent at issue in its patent-litigation lawsuit against York and YPC was invalid; and, Smart was infringing multiple GTL patents and GTL would sue Smart to prohibit it from using those infringing technologies at YCP. These allegations of falsity and their deterrent effect go beyond the mere "[t]hreadbare recitals of the elements of a cause of action" that we reject as conclusory. Iqbal, 556 U.S. at 678.[11]

---

plead a separate [defamation] cause of action." JA 40. Neither party contends this was error and we do not reach that issue here.

[11] In its brief on appeal, GTL argues that Smart's allegations are also inadequate because Smart "pleads no facts establishing that the alleged statements were false."

14

Having found that these allegations are not conclusory, we now consider whether the allegations plausibly state a claim for relief. Id. at 679. The District Court suggested that Smart's allegations might also fail because Smart only alleged that GTL made predictions or false statements about matters of opinion—not matters of fact, as required for defamation. See, e.g., Baker v. Lafayette Coll., 532 A.2d 399, 402 (Pa. 1987). Smart argues that GTL's alleged statement that it "had a judgment [against Lattice] giving it the right to seize Smart's equipment" is a defamatory fact that "can be objectively verified as true or false." Reply Br. 23. Smart also argues that some of GTL's opinion statements might be actionable defamatory "'mixed' opinion" statements—that is, opinion statements that "imply the existence of undisclosed defamatory facts." Green v. Mizner, 692 A.2d 169, 174 (Pa. Super. Ct. 1997).

We agree that the alleged defamatory statements appear to include some predictions and statements of opinion. The statements contained in the Complaint also appear, however, to concern matters of fact. Because it viewed Smart's allegations as conclusory, the District Court did not examine whether Smart alleges any factual statements or mixed opinion statements (as well as the other required elements of Smart's

---

Resp. Br. 37. But under Pennsylvania statute, the plaintiff does not have the burden of pleading or proving facts establishing that the defamatory statement was false; the defendant has the burden of proving truth as an affirmative defense. See 42 Pa. Consol. Stat. § 8343(b)(1) (defendant has burden of proving "[t]he truth of the defamatory communication"); see also LabMD Inc. v. Boback, 47 F.4th 164, 182–83 (3d Cir. 2022) ("[A] defendant who disputes falsity has to prove the truth of the defamatory communication.").

15

defamation allegations) sufficient to support independently actionable defamation claims as required by the two torts raised in its Complaint. Since we have found that the allegations were not conclusory, we will vacate that part of the District Court's order and remand for fuller consideration of whether Smart has adequately pled defamation and the viability of the tort claims.

Finally, as the District Court noted, Smart argued for a broader definition of unfair competition. Pennsylvania has traditionally defined unfair competition as "passing off a rival's goods as one's own." JA 41. Smart argues for a broader definition which embraces the idea that "if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition." Restatement (Third) of Unfair Competition § 1 cmt. g (Am. L. Inst. 1995). The District Court decided that Smart's unfair-competition claim failed even "assuming that the broader definition of unfair competition from the Restatement applies." JA 46. Though the District Court seemed to accept this broader definition, it also held, without further explanation, that Smart's unfair-competition claim failed because Smart cited no cases "providing for a cause of action for unfair competition under the circumstances present here." Id. at 45. From this, we are unable to discern what element (or other basis) the District Court found lacking. We therefore also leave to the District Court to decide whether, after analyzing Plaintiffs' defamation allegations, Plaintiffs state a claim for unfair competition as Pennsylvania courts understand that tort.

16

## III.    CONCLUSION

For the foregoing reasons, we will affirm in part and vacate in part, and remand for proceedings consistent with this opinion.